868 F.2d 1447
 1989 A.M.C. 1552
 In the Complaint and Petition of LLOYD'S LEASING LIMITED, As
Owner, and Cammell Laird Shipbuilders, Ltd., et
al., Petitioners-Appellees,
v.
CONOCO, Claimant-Third Party Defendant-Appellee
v.
Bob WHITE et al., Claimants-Third Party Plaintiffs-Appellants,
v.
U.S. ARMY CORPS OF ENGINEERS, Lake Charles Pilots, Inc. and
Simrad Subsea, Inc. of Oslo Norway, Third-Party
Defendants-Appellees.
In the Complaint & Petition of LLOYD'S LEASING LTD., etc.,
et al., Petitioners-Appellees,
v.
Willis LUCAS, et al., Claimants-Appellants.
 Nos. 88-2450, 88-2515.
 United States Court of Appeals,
Fifth Circuit.
 April 4, 1989.
Rehearing and Rehearing En Banc Denied May 19, 1989.
 
 Charles R. Houssiere, III, Bob Schaffer, Houston, Tex., for Bob white, et al.
 Susan M. Theisen, Asst. Atty. Gen., Energy and Environmental Protection Div., Austin, Tex., for State of Tex.
 Wendell C. Radford, Beaumont, Tex., for Johnson Marine and Jack's Shrimp House, et al.
 James Patrick Cooney, John M. Elsley, Houston, Tex., for Lloyd's, et al.
 H.S. Morgan, Jr., Theodore G. Dimitry, Henry S. Morgan, Houston, Tex., for Conoco.
 Lester Lautenschlaeger, New Orleans, La., for Lake Charles Pilots Ass'n.
 R. Scott Blaze, Mee Lon Lam, Deborah Kossow, U.S. Dept. of Justice, Civil Div., Tort Branch, Aviation and Admiralty Section, Washington, D.C., for U.S. Army Corps of Engineers.
 Otto D. Hewitt, III, Efvin A. Apffel, Jr., Michael L. Neely, Galveston, Tex., for Lucas, et al.
 Ralph K. Harrison, The Wooklands, Tex., for Mitchell Energy, et al.
 Appeals from the United States District Court for the Southern District of Texas.
 Before GEE, HIGGINBOTHAM, and DUHE, Circuit Judges.
 PER CURIAM:
 
 
 1
 In July 1984 the M/T Alvenues grounded in the Calcasieu River Bar Channel about eleven nautical miles south/southeast of Cameron, Louisiana. As a result of the grounding one of the ship's tanks cracked, spilling 65,500 barrels of crude oil into the waters of the Gulf of Mexico. Given the particular combination of tides and winds that existed at the time of the spill, the oil washed ashore on Galveston Island, approximately 70 miles west of the site of the grounding.
 
 
 2
 Following the accident the petitioners/appellees filed an admiralty limitation of liability action. Over 375 claimants filed claims against the petitioner and third party defendants. The trial court divided the claimants into four groups based on the type of damages sustained. One of these groups consisted of claimants who suffered damages from oil tracked onto their premises by tourists and beachgoers. The appellants are the members of this group of claimants. In January 1988 the trial court granted the petitioners/appellees' motion for summary judgment as to this group of claimants. The basis for the court's decision was that these claimants were barred from recovery because the damage to them was, as a matter of law, not foreseeable. The appellants contend that the trial court erred in granting summary judgment. Because we agree with the district court's conclusion that the harm suffered by the appellants was not foreseeable we AFFIRM the judgment of the district court.
 
 
 3
 The [Supreme] court has stated that Fed.R.Civ.P. 56(c) mandates summary judgment in any case where a party fails to establish the existence of an element essential to this case and on which he bears the burden of proof. A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact.
 
 
 4
 Washington v. Armstrong World Industries, Inc., 839 F.2d 1121 (5th Cir.1988) (citation omitted).
 
 
 5
 To establish a cause of action based on negligence the plaintiff must establish the existence of four elements. These elements are: "(1) the defendant was under a duty to the plaintiff to use due care, (2) the defendant was guilty of a breach of that duty, (3) the plaintiff has suffered damages, and (4) the breach of the duty proximately caused these damages." Morris, Morris on Torts, 44 (2nd Edition) (emphasis in original). In this case the district court granted the appellees' motion for summary judgment based on its determination that the appellants had failed to establish the existence of one of these elements, i.e., that the defendant had a duty to the plaintiff. This determination was, in turn, based on the court's conclusion that the harm suffered by the plaintiff was not foreseeable.
 
 
 6
 The appellants advance two arguments for reversal: First, that foreseeability is a question of fact and should not be decided as a matter of law; Second, that summary judgment was inappropriate because the affidavits of their experts raised a material fact issue.
 
 
 7
 In Consolidated Aluminum Corporation v. C.F. Bean Corp., 833 F.2d 65, 67 (5th Cir.1987) we stated that "[d]etermination of the tortfeasor's duty, and its parameters, is a function of the court. That determination involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party." (citations omitted) The district court therefore properly addressed the issue of whether the harm suffered by the plaintiff was foreseeable. We must now determine whether it correctly decided that issue.
 
 
 8
 In Consolidated Aluminum Corp., supra, we held that "[d]uty ... is measured by the scope of the risk that negligent conduct foreseeably entails ... and marks the limits placed on a defendant's duty...." Id. at 65. (citation omitted)
 
 
 9
 The court went on to state that harm is "the foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention." Id. at 68.
 
 
 10
 Applying this definition, we conclude that the district court's determination that the harm suffered by the plaintiffs was not foreseeable and that the appellees therefore owed no duty to the appellants is correct. The original oil spill occurred seventy (70) miles from Galveston in the Gulf of Mexico. The coastline between Calcasieu, Louisiana, the site of the spill, and Port Isabel, on the Mexico border, extends for approximately 340 miles. Approximately 60 miles of this coastline is developed. To produce the possibility of tracking damages such as these the oil had to wash ashore on a developed shore, where there were people to track it and places to track it into. The appellants' experts testified that tracking damages are a probable consequence of oil spills that wash ashore in inhabited areas, a commonsense conclusion that gains little force when voiced by an expert. Their testimony did not, however, address the probability that this oil spill would wash ashore in such an area. Therefore their testimony does not preclude a grant of summary judgment. While the appellee might reasonably anticipate that the oil would probably wash ashore somewhere, it had no reason to have anticipated that the oil would probably wash ashore in a heavily populated area and then be tracked into businesses and homes. "[T]o be found liable a defendant must have 'knowledge of a danger, not merely possible but probable ...' " Id. at 68. (citation omitted).
 
 
 11
 In light of these facts we conclude that the appellants have failed to establish a requisite element of a negligence action, i.e., that the harm to the appellants was foreseeable and that the appellees therefore owed a duty to the appellant. Consequently the district court properly granted the appellees' motion for summary judgment.
 
 The judgment of the district court is
 
 12
 AFFIRMED.
 
 
 13
 PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring in part and dissenting in part:
 
 
 14
 The M/V Alvenus ran aground in the Calcasieu Channel Pass off the Louisiana Coast in the Gulf of Mexico. When its hull split it spilled between two and three million gallons of heavy crude oil and tar approximately eleven nautical miles off the coast. Most of the crude oil floated ashore along the Gulf Coast and the Galveston County area. The predictable result was a significant downturn in the fortunes of surrounding businesses dependent on the tourist trade. Confronted with our opinion in State of La. ex rel. Guste. v. M/V Testbank, 752 F.2d 1019 (5th Cir.1985) (en banc) (no recovery of economic losses absent physical injury to a proprietary interest), an innovative group of merchants located in the vicinity of the oiled beach suggest that they suffered the requisite physical injury in that beachgoers, their customers, tracked the sticky oil residue into their businesses. They offered "expert testimony" in opposition to summary judgment for the self-evident proposition that such "tracking" is the foreseeable consequence of the spill. The district court granted summary judgment concluding that such damage was not foreseeable. The majority here affirm that decision, apparently concluding that it was not foreseeable that the oil would find its way to this beach. With deference, although I am in substantial agreement with the majority over the outcome of this case, I would travel a different path.
 
 
 15
 In Consolidated Aluminum Corp. v. C.F. Bean Corp., 833 F.2d 65, 68, we explained how foreseeability limits the tortfeasor's duty. We explained that it is "the foreseeable consequence of an act or omission if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention."
 
 
 16
 I am persuaded that spilling millions of gallons of crude oil into the sea eleven miles off the gulf coast created a direct and foreseeable risk of tainting the coastline. It is no answer that the precise coastal point to be hit was not foreseeable; it is enough that the risk realized be within the set of foreseeable risks. Defendants point to the seventy-mile movement of the spill and the weather and winds that might have brought the oil ashore elsewhere. Stripped to essentials, defendants urge that the vessel owner owed no duty shoreward. This argument calls for far-reaching exoneration of the shipping industry from responsibility to the gulf coast, making curious indeed our effort in the Testbank line of cases to adopt a pragmatic limitation on the doctrine of foreseeability.
 
 
 17
 In Testbank, the collision in the Mississippi River blocked river traffic causing "wave upon wave of successive economic consequences" up the river and around it. We confined recovery for injury to persons who suffered a physical injury to a proprietary interest. For the reasons that we explained there, we refused to allow recovery to extend to the full reach of foreseeability.
 
 
 18
 The defendants in today's case would have us believe that foreseeability encompasses little more than specifically identified and inevitable outcomes. But surely the duty of a person firing a gun into the air in a populated area extends to all persons in the zone of danger of his acts. That is the essence of duty and foreseeability.
 
 
 19
 The majority understandably balks at the claims of businesses who point to the tracking of oil. I would find the answer in Testbank, rather than in a forced reading of foreseeability, for the reasons we there explained. Our insistence upon physical injury to a proprietary interest was a forthright pragmatic limit on the doctrine of foreseeability. Undoubtedly many persons suffered some foreseeable physical loss and yet were not allowed to recover general economic losses. These physical losses were not a direct consequence of the collision and spill but were the secondary consequences of shipping delays.
 
 
 20
 Testbank limits which parties can recover for foreseeable injuries. In this appeal, the claimants' only physical injury is two parties removed from the most immediate Testbank plaintiff, the owner of the affected shore property. The spillage came to rest upon the property of one party, and was then removed by a second party--the sticky-footed interlopers--onto the property of still a third party, the plaintiffs in this case. Arguably such injury is a foreseeable consequence of the spill, but its nexus with the spill is a step removed, and so the plaintiffs are beyond the ambit of permissible claimants under Testbank.
 
 
 21
 I would hold that these claimants cannot recover general economic losses attributed to the general loss of custom attending the spill because they have no physical injury within the meaning of Testbank. I would affirm the summary judgment for defendants, to this extent, allowing them to proceed only with their claim for losses attributable to actual physical injury and any losses which that physical injury caused. I would not allow recovery for losses attributable to the general loss of customers resulting from the spoiled beach.