# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 14, 2010

No. 08-30738

Lyle W. Cayce
Clerk

In Re:  In the Matter of the Complaint of GREAT LAKES DREDGE & DOCK COMPANY LLC, As Owner of the dredges California, Manhattan Island, Padre Island, and Alaska, and as owner pro hac vice of the Dredge Texas from Exoneration from the Limitation of Liability

------------------------------------

GREAT LAKES DREDGE & DOCK COMPANY, As owner of the dredges California, Manhattan Island, Padre Island, and Alaska, and as owner pro hac vice of the Dredge Texas

      Petitioner - Appellee

  v.

LOUISIANA STATE; ORLEANS PARISH SCHOOL BOARD; DEBBIE M THOMAS RICHARDSON; PHILLIP REED; MARGUERITE ABRAHMS; ET AL

      Claimants - Appellants

---------------------------------------

In Re: In the Matter of the Complaint of MIKE HOOKS INC, as owner of the Dredge Missouri H

      Petitioner - Appellee

  v.

LOUISIANA STATE; ORLEANS PARISH SCHOOL BOARD; DEBBIE M THOMAS RICHARDSON; PHILLIP REED

      Claimants - Appellants

---------------------------------------

In Re: In the Matter of the Complaint of T L JAMES & COMPANY INC,

No. 08-30738

as owner of the dredges Tom James and George D Williams II praying exoneration from or limitation of liability

      Petitioner - Appellee

  v.

LOUISIANA STATE; ORLEANS PARISH SCHOOL BOARD; DEBBIE M THOMAS RICHARDSON; PHILLIP REED

      Claimants - Appellants

----------------------------------------

In Re: In the Matter of the Complaint of GULF COAST TRAILING COMPANY, a Louisiana Partnership, as owner of the dredge Ouachita, praying for exoneration from or limitation of liability; TLJIC LLC, a partner therein as owner of the dredge Ouachita praying for exoneration from or limitation of liability

      Petitioners - Appellees

  v.

LOUISIANA STATE; ORLEANS PARISH SCHOOL BOARD; DEBBIE M THOMAS RICHARDSON; PHILLIP REED

      Claimants - Appellants

----------------------------------------

In Re: In the Matter of the Complaint of MANSON CONSTRUCTION COMPANY, as owner and operator of the Hopper Dredges Newport and Bayport, for exoneration from or limitation of liability

      Petitioner - Appellee

  v.

LOUISIANA STATE; ORLEANS PARISH  SCHOOL BOARD; DEBBIE M THOMAS RICHARDSON; PHILLIP REED

      Claimants - Appellants

2

No. 08-30738

-----------------------------------------

In Re:  In the Matter of the Complaint of LUHR BROS INC, as owner of Spud Barge L-1101, Spud Barge L-1103 and M/V Michael A and as owner Pro Hac Vice of M/V Charlie B praying for exoneration from or limitation of liability

       Petitioner - Appellee

  v.

LOUISIANA STATE; ORLEANS PARISH SCHOOL BOARD; DEBBIE M THOMAS RICHARDSON; PHILLIP REED

       Claimants - Appellants

-----------------------------------------

In Re:  In the Matter of the Complaint of KING FISHER MARINE SERVICE L P as owner of the Dredges Leonard M Fisher and Everett Fisher

       Petitioner - Appellee

  v.

LOUISIANA STATE; ORLEANS PARISH SCHOOL BOARD; DEBBIE M THOMAS RICHARDSON; PHILLIP REED

       Claimants - Appellants

-----------------------------------------

In Re:  In the Matter of the Complaint of PINE BLUFF SAND AND GRAVEL COMPANY as owner and operator of dredge Marion praying for exoneration from or limitation of liability

       Petitioner - Appellee

  v.

LOUISIANA STATE; ORLEANS PARISH SCHOOL BOARD; DEBBIE M THOMAS RICHARDSON; PHILLIP REED

No. 08-30738

Claimants - Appellants

------------------------------------------------

In Re:  In the Matter of the Complaint of WEEKS MARINE INC
as owner of the Dredges B E Lindholm, George D Williams, Weeks
262 and BT 208

    Petitioner - Appellee

  v.

LOUISIANA STATE; ORLEANS PARISH SCHOOL BOARD; DEBBIE M
THOMAS RICHARDSON; PHILLIP REED

    Claimants - Appellants

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before KING, HIGGINBOTHAM and GARZA, Circuit Judges.

KING, Circuit Judge:

In this consolidated limitation action, Claimants, Hurricane Katrina flood victims, filed claims against the Limitation Petitioners, private companies that operated twenty-two dredging vessels along the Mississippi River Gulf Outlet pursuant to contracts with the United States Army Corps of Engineers. Claimants suffered damages from the flooding of Orleans and St. Bernard Parishes when several levee systems failed as a result of the erosion of protective wetlands allegedly caused by the Limitation Petitioners' negligent maintenance dredging operations.  The Limitation Petitioners moved to dismiss the claims under FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(c).  The district court granted the motion to dismiss, finding that the Limitation Petitioners owed no duty to the Claimants because the devastation caused by Hurricane Katrina was

4

No. 08-30738

not a foreseeable result of the allegedly negligent conduct of any Limitation Petitioner. Claimants timely appealed. We affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Mississippi River Gulf Outlet ("MRGO") is a 76-mile navigational channel that connects the Gulf of Mexico with the Industrial Canal in New Orleans, bisecting the marshy wetlands of St. Bernard Parish and Chandeleur Sound. It was built between 1958 and 1965 by the United States Army Corps of Engineers ("Corps of Engineers") pursuant to congressional authorization. From 1965 to 1993, the Corps of Engineers performed maintenance dredging to maintain the navigability of the MRGO. Beginning in 1993, the Corps of Engineers contracted with numerous private dredging companies, including the Limitation Petitioners, to assist the Corps of Engineers in maintenance dredging along the MRGO. From 1999 to 2004, the Corps of Engineers awarded 154 contracts to private dredging companies, many to the Limitation Petitioners, to dredge the length of the MRGO channel.

Claimants in the present action, who number in the tens of thousands, are individuals, businesses, and other entities who own property that was damaged due to flooding after Hurricane Katrina made landfall on August 29, 2005. They contend that the Limitation Petitioners' maintenance dredging operations caused severe damage to the Louisiana wetlands, which provide a natural barrier against tidal surge from storms and hurricanes. This damage to the wetlands caused an amplification of the storm surge in the New Orleans region during Hurricane Katrina, which increased the pressure on the levees and flood walls along the MRGO, leading to levee breaches and the subsequent flooding of St. Bernard Parish and Orleans Parish.

No. 08-30738

Prior to the instant action, two separate class action suits ("*Reed*" and "*Ackerson*") were filed in the District Court for the Eastern District of Louisiana by plaintiffs seeking damages from the United States and from private companies that performed maintenance dredging in the MRGO pursuant to government contracts. After consolidation of the *Reed* and *Ackerson* suits, the government and the defendant dredgers moved to dismiss.

Before the district court ruled on the defendants' motions, several of the dredgers filed petitions in the Eastern District of Louisiana under the Limitation of Liability Act, 46 U.S.C. § 30511, seeking exoneration from and/or limitation of liability for all claims for any damages arising out of Hurricane Katrina as a result of their maintenance dredging activities for the Corps of Engineers.[1] The limitation actions were consolidated into the present case (the "limitation action") and transferred to the judge presiding over the *Reed* and *Ackerson* suits.

The district court subsequently granted the motions to dismiss the claims against the government and the defendant dredgers in the *Reed* and *Ackerson* suits.[2] *See In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2007 WL 763742 (E.D. La. Mar. 9, 2007). The district court dismissed the claims against the government for lack of subject matter jurisdiction.[3] *Id.* at \*2. The district

---

[1] The Limitation of Liability Act allows a shipowner to limit his potential liability for a maritime accident to the value of his interest in the vessel and its cargo. 46 U.S.C. § 30511.

[2] The Limitation of Liability Act provides that "[w]hen an action has been brought under this section . . ., all claims and proceedings against the owner related to the matter in question shall cease." § 30511. Here, however, the district court proceeded to judgment on the motions to dismiss in the *Reed* and *Ackerson* suits after the limitation actions were filed. On appeal from the district court's ruling, we concluded that the district court did not commit a reversible error in entering judgment on the motions to dismiss because the Claimants had "not identified any substantial prejudice arising out of the district court's procedural error." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 210 (5th Cir. 2009). The parties do not challenge the order of decisions in this appeal.

[3] The district court found that the plaintiffs failed to file a timely administrative claim prior to filing suit against the government, as required by the Admiralty Extension Act, 46

No. 08-30738

court dismissed the claims against the dredging companies under the government contractor immunity doctrines articulated in *Yearsley v. W.A. Ross Constr. Co.*[4] and *Boyle v. United Techs. Corp.*[5]  The district court found that, because the dredging companies were alleged to have performed their contracts in conformity with the Corps of Engineers' specifications, and were not alleged to have performed negligently or absent due care, the dredgers, as government contractors, were immune from liability for any damages caused by their dredging operations for the Corps of Engineers. *In re Katrina*, 2007 WL 763742, at *3–4.  We affirmed on appeal, finding that the pleadings "attack Congress's policy of creating and maintaining the MRGO, not any separate act of negligence by the Contractor Defendants," and therefore the district court did not err in dismissing the action on the basis that *Yearsley* immunity applied.  *See Ackerson*, 589 F.3d at 207.

---

U.S.C. § 30101(c).  This ruling was not appealed.

[4] 309 U.S. 18 (1940).  In *Yearsley*, the Supreme Court held that a government contractor was not liable for damage caused by the construction of dikes in the Missouri River, where the construction project was validly authorized and directed by the federal government.  The court held that if "th[e] authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will."  *Id.* at 20–21.  To hold the contractor liable, "the ground of liability [must be] found to be either that he exceeded his authority or that it was not validly conferred."  *Id.* at 21.

[5] 487 U.S. 500 (1988).  Under *Boyle*, liability cannot be imposed upon government contractors for design defects in military equipment when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Id.* at 512.  Citing *Boyle*, the district court stated that "[c]ontractors cannot be held liable for performing contracts in conformity with the Government's specifications, providing the contractors carried out such contracts with due care and absent negligence."  *In re Katrina*, 2007 WL 763742, at *4.  The district court noted that "Plaintiffs' counsel in the briefs and at oral argument could not point out any allegation in the lengthy complaint which alleged that the Dredging Defendants did not carry out the contracts at issue with due care."  *Id.*  We did not address this portion of the district court's ruling on appeal.

No. 08-30738

Following dismissal of the class action suits, Claimants filed claims against the dredgers in the limitation action. Many of the claims asserted in the limitation action were substantially similar to those brought against the dredgers in the *Reed* and *Ackerson* suits. But the Claimants also added new allegations of negligence to defeat the dredgers' government contractor immunity defenses, as well as the dredgers' entitlement to exoneration from or limitation of liability under the Limitation of Liability Act. Specifically, they alleged that the Limitation Petitioners "failed to perform their dredging work with due care" and that they "performed their dredging work in the MRGO negligently." Claimants also alleged that the Limitation Petitioners violated requirements imposed by their contracts with the Corps of Engineers and by various federal and state statutes and regulations:

28.  Limitation Petitioners and the Vessels failed to follow requirements of 33 CFR Parts 335–38, particularly 33 CFR 336.1(c)(4) and 33 CFR 320.4(b) and Executive Order No. 11990 made applicable thereby.

29.  Limitation Petitioners and the Vessels deviated from and/or failed to execute their dredging activities in the manner required by the Corps of Engineers, or by reasonably precise specifications issued by the Corps of Engineers (if they were issued) and/or by Nationwide Permits, specific permits, or general authorizations for dredging issued by or obtained by the Corps of Engineers pursuant to 33 CFR 337.5 and 338.2, and all other regulations that Limitation Petitioners and the Vessels were required to follow.

30.  Limitation Petitioners and the Vessels failed to follow Louisiana State dredging requirements (made applicable by 33 CFR 337.2), including those contained in Chapter 7, Sections 701 and 707 of the Louisiana Administrative Code related to dredging activities.[6]

---

[6] In the *Reed* and *Ackerson* cases, plaintiffs moved to amend their complaints to assert nearly identical allegations as those asserted in Claims ¶¶ 28, 29, and 30 in the instant action. We affirmed the district court's denial of leave to amend to add these allegations, holding that

8

No. 08-30738

31. Limitation Petitioners and the Vessels have performed "advance maintenance" and "over-depth" dredging of the MRGO, going beyond its authorized project depth. Limitation Petitioners and the Vessels have also performed "over-width" dredging, also for advance maintenance purposes. Limitation Petitioners and the Vessels also overcut the slope of the channel, based on the potential for undisturbed material to slough downward to the channel, and for other reasons, changing the designed slope of the channel's banks, thereby enlarging the design width of the channel, causing wetlands along the banks of the channel to erode, and causing the width of the channel to increase. These activities were conducted without authorization, approval or control of the Corps of Engineers, and were outside of any reasonably detailed specifications provided by the Corps of Engineers for the work. These activities by Limitation Petitioners and the Vessels constitute negligence and violate regulations enacted to control dredging activities.

Thus, in contrast to the *Reed* and *Ackerson* cases, the Claimants alleged that their injuries resulted from the erosion to the wetlands caused by the Limitation Petitioners' *negligent* dredging, performed in breach of the standards set out in their Corps of Engineers contracts and various rules and regulations alleged to apply to their operations, rather than from the very existence of the MRGO or by any non-negligent dredging performed by the Corps of Engineers or the Limitation Petitioners in conformity with their government contracts.

The Limitation Petitioners moved to dismiss under Rule 12(b)(1) and Rule 12(c). The district court granted the motion, holding as a matter of law that the Limitation Petitioners did not owe a duty to the Claimants, and were therefore not liable, because the Claimants' hurricane damages were not the legally foreseeable consequence of the Limitation Petitioners' allegedly negligent dredging activities. Relying on a standard that we articulated in *Consolidated*

_____

they were too conclusory to state a claim for relief. *Ackerson*, 589 F.3d at 208–09.

No. 08-30738

*Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65 (5th Cir. 1987), the district court held that the harm was too attenuated from the alleged cause to be legally foreseeable, noting:

> [i]t is simply inconceivable to this Court why discrete acts of dredging after 1993 by the myriad dredgers would be sufficient for the specific dredger to foresee the absolutely devastating and cataclysmic damages that occurred to St. Bernard and Orleans Parishes. Simply put, the Limitation Dredgers could not have anticipated that its alleged negligent dredging would be a cause thereof.

Furthermore, the district court held that the pleadings failed sufficiently to allege a causal connection between any of the Limitation Petitioners' alleged negligent acts and any of the Claimants' damages. "[I]t seems inexorable that in order to find liability, there would have to be some group liability finding in reference to causation. Claimants have cited no case in the maritime law context where a group liability theory has been recognized or applied." The district court concluded, "[t]o recover on this theory would obviate proof of individual causation and [the theory] is therefore fatally flawed."[7] Claimants timely appealed.

## II. DISCUSSION

### A.    Rule 12(b)(1)

The Claimants argue on appeal that the district court erred in dismissing their claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction,

---

[7] The Limitation Petitioners also argued that the Claimants' allegations in the instant action are practically identical to those that the district court rejected in the *Reed* and *Ackerson* cases, and should therefore be dismissed on the same basis—that the Claimants did not allege that the dredgers deviated from their contracts to overcome their immunity as government contractors under *Yearsley*. They also argued that the new allegations of negligence were too conclusory to compel a different result. The district court found that the pleadings sufficiently alleged that the Limitation Petitioners were not entitled to the government contractor immunity shield to overcome dismissal on this basis. The parties do not challenge this determination on appeal.

10

asserting that the district court had jurisdiction over their claims under 28 U.S.C. § 1333.[8]  Alternatively, they argue that, had the district court lacked jurisdiction, it erred in reaching the merits of their claims and dismissing them with prejudice under Rule 12(c) for failure to state a claim.

The Claimants are correct that when, as here, "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits[ . . . ] to prevent[ ] a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  Furthermore, they correctly note that if the district court had held that it lacked subject matter jurisdiction, it should have entered dismissal without prejudice to allow the Claimants to retry their claims in a court with jurisdiction to hear them.  *See id.* ("The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.").

However, it is clear from the substance of the district court's opinion that the district court did not dismiss for lack of subject matter jurisdiction. Although the district court referenced both Rules 12(b)(1) and 12(c) when granting the motion to dismiss, the entirety of the district court's analysis addressed the merits of the Claimants' pleadings.  The district court stated no basis for dismissal under Rule 12(b)(1), and we agree with the Claimants that none exists.  Accordingly, because the district court did not hold that it lacked subject matter jurisdiction, and as there is no basis for such a holding, the district court did not err in entering dismissal with prejudice on the merits

---

[8] "The district courts shall have original jurisdiction, exclusive of the courts of the States, of any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."  § 1333(1).

under Rule 12(c). We therefore conclude that the district court's reference to Rule 12(b)(1) does not provide a basis for reversal.[9]

## B.    Rule 12(c)

We review de novo a district court's ruling on a Rule 12(c) motion for judgment on the pleadings. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citing *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). A motion under Rule 12(c) for failure to state a claim is subject to the same standards as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Great Plains Trust Co.*, 313 F.3d at 313 n.8).

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *MySpace*, 528 F.3d at 418 (citing *Hughes*, 278 F.3d at 420). We do not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

### 1.    Duty and Foreseeability

The district court held that the Limitation Petitioners owed no duty to the Claimants, and therefore were not liable, because the individual dredgers could

---

[9] On appeal, the Limitation Petitioners withdraw this basis for dismissal, agreeing with the Claimants that the district court had jurisdiction under 18 U.S.C. § 1333.

not have foreseen that discrete acts of negligent dredging could have resulted in the "absolutely devastating and cataclysmic damages that occurred to St. Bernard and Orleans Parishes."

On appeal, Claimants contend that their damages were foreseeable because it is well known, as a matter of general knowledge, that the wetlands provide storm surge mitigation; that the levees protecting cities and towns in the coastal areas were designed with the assumption that the buffering action provided by the wetlands would remain intact; and that dredging activities cause damage to the wetlands. Accordingly, they contend, the district court erred in holding that the Limitation Petitioners did not and could not have foreseen that flooding could result from the damage to the wetlands caused by their maintenance dredging operations.

Additionally, the Claimants contend that the district court erroneously disregarded the Securities and Exchange Commission ("SEC") 10-K filings of Great Lakes Dredge & Dock Co. ("Great Lakes"), one of the Limitation Petitioners, that the Claimants submitted to the district court in post-hearing briefing. The Claimants argue that in portions of these filings, Great Lakes acknowledges that its operations carry environmental risks, including flooding; that its operations are subject to various environmental laws and regulations related to the prevention of environmental damage, including damage to the wetlands; and that erosion to Louisiana wetlands has increased the region's exposure to hurricanes. The Claimants contend that these statements contradict the Limitation Petitioners' assertion that the flooding that caused the Claimants' injuries was not foreseeable. The district court concluded that these documents were "rather standard SEC filings," and that Great Lakes' acknowledgment that its operating risks include flooding "does not indicate that Great Lakes could foresee the catastrophic damages alleged here under the test set forth in *Consolidated Aluminum*."

13

No. 08-30738

The parties agree that maritime law governs the Claimants' claims, which relate to the Limitation Petitioners' conduct of operations on a navigable waterway. *See Creppel v. Shell Oil Co.*, 738 F.2d 699, 701 (5th Cir. 1984) (torts occurring in navigable waters are governed by maritime law). "[N]egligence is an actionable wrong under general maritime law," and the elements of that tort are "essentially the same as land-based negligence under the common law." *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005). To state a claim for relief under maritime law, the "plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)) (alteration in original).

"Determination of the tortfeasor's duty is a question of law and thus a function of the court that we review de novo." *Miss. Dep't of Transp. v. Signal Int'l LLC* (*In re Signal Int'l LLC*), 579 F.3d 478, 490 (5th Cir. 2009). Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances.[10] *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980). The determination of the existence and scope of a duty "involves a number of

---

[10] Claimants argue at length on appeal that we can derive a duty of care in this case from provisions in the Limitation Petitioners' contracts with the Corps of Engineers and in various allegedly applicable federal and state statutes, citing *Galentine v. Estate of Stekervetz*, 273 F. Supp. 2d 538, 544 (D.Del. 2003) ("in admiralty, the duty of care may be derived from: 1) duly enacted laws, regulations, and rules; 2) custom; or 3) the dictates of reasonableness and prudence."). They contend that the Limitation Petitioners' violations of these provisions constituted a breach of duty under maritime law. Because we agree with the district court that the damages alleged to result from the Limitation Petitioners' actions were not reasonably foreseeable, we need not determine whether we can look to these statutory and contractual provisions to establish whether the Limitation Petitioners' conduct amounted to a breach of a duty of care. *See Daigle*, 616 F.2d at 827 (a defendant's failure to fulfill a duty of care under maritime law "does not breach that duty, . . . unless the resultant harm is reasonably foreseeable").

14

No. 08-30738

factors, including most notably the foreseeability of the harm suffered by the complaining party." *Consol. Aluminum*, 833 F.2d at 67. Duty "may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct." *Id.* Thus, if the injuries suffered allegedly as a result of the Limitation Petitioners' negligent dredging were not foreseeable, the Limitation Petitioners owed no duty to the Claimants and are not liable as a matter of law.

In the context of maritime torts, we have considered harm to be a foreseeable consequence of an act or omission

> if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention.

*Id.* at 68. To show that the individual Limitation Petitioners are liable in the instant case, the Claimants would have to show that each Limitation Petitioner reasonably should have foreseen that the sequence of events leading to their damages—the amplification of the storm surge during Hurricane Katrina, the failure of the levee systems, and the subsequent flooding of Orleans and St. Bernard Parishes—would be a *probable* result of its negligent acts and the marginal erosion to the wetlands caused thereby. *See Consol. Aluminum*, 833 F.2d at 68 (harm is not foreseeable unless it "might have been anticipated by a reasonably thoughtful person, as a *probable* result of the act or omission") (emphasis added); *Republic of France v. United States*, 290 F.2d 395, 401 (5th Cir. 1961) (a defendant must have "'knowledge of a danger, not merely possible, but probable'") (quoting *Dalehite v. United States*, 346 U.S. 15, 42 (1953)).

We have on several occasions examined foreseeability of harm in the context of maritime torts. In *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, the plaintiff sued to recover for physical damage caused to its manufacturing facilities and attendant economic loss due to the disruption of its supply of natural gas. 833 F.2d at 66. The disruption was caused when the defendant's

15

dredge negligently ruptured a natural gas pipeline, causing the natural gas provider to close the nearest valves to stem the flow of escaping gas. *Id.* We refused to impose liability because we were "not persuaded that [the defendant] could have anticipated that its failure to follow safe dredging practices would likely result in physical damage to the equipment and work-in-progress at [the plaintiff's] aluminum reduction plant several miles away." *Id.* at 68. We explained:

> The harm was not of a general sort expected to follow from the failure to dredge carefully in proximity to a gas pipeline. Injury to property and persons from the escaping gas, or from a fire which might have ensued, would be examples of consequences that would be foreseeable. . . . But the damage arising from the loss of natural gas supply, in turn causing the shut down of electric turbines, in turn causing a loss of electric power vital to the aluminum reduction process, with the ultimate result being substantial damage to equipment and product-in-process, goes beyond the pale of general harm which reasonably might have been anticipated by negligent dredgers.

*Id.* We therefore concluded as a matter of law that no duty was owed with respect to the damages suffered.

We applied the standard articulated in *Consolidated Aluminum* in *Lloyd's Leasing Ltd. v. Conoco*, 868 F.2d 1447 (5th Cir. 1989). There, the plaintiffs, owners of property seventy miles from the site of an oil spill, sued for damages resulting after the oil washed ashore and was tracked onto their properties from the beach by vacationers. *Id.* at 1448. We concluded that the harm suffered by the plaintiffs was not foreseeable because most of the area in which the oil might plausibly have washed ashore was undeveloped. *Id.* at 1449. We held that although "the [defendant] might reasonably anticipate that the oil would probably wash ashore somewhere, it had no reason to have anticipated that the oil would probably wash ashore in a heavily populated area and then be tracked into businesses and homes." *Id.*

16

In each case, this court found the causal connection between the alleged negligence and the resulting harm to be too attenuated to be foreseeable as a matter of law. To be foreseeable, the harm alleged must bear some proximate relationship with the negligent conduct such that it can reasonably be said to be within the "scope of the risk" created by that conduct. *Consol. Aluminum*, 833 F.2d at 67. For instance, in *In re Signal International LLC*, where negligently-moored barges broke free and allided with a bridge during Hurricane Katrina, we found that the bridge

> was within the general class of fixed structures in the low-lying areas near the Pascagoula River against which [the defendant vessels] could foreseeably allide when propelled by the anticipated storm surge, and the general class of persons for which the harm of allision was foreseeable were those possessing fixed or other property within the path of the anticipated surge.

579 F.3d at 492. We distinguished that case from *Consolidated Aluminum* and *Lloyd's Leasing*, noting, "the harms in those cases did not arise from the risk of danger created by negligence and instead involved [an] improbable interplay of natural and human forces . . . and the party at fault was able to identify events that would not have been foreseen by a reasonable person." *Id.* at 495 n.19.

We agree with the district court that the harm suffered by the Claimants was not a foreseeable consequence of the Limitation Petitioners' allegedly negligent dredging operations. Whereas in *Signal*, the negligent barge-owner anticipated Hurricane Katrina's approach and failed to secure the barges to withstand the expected storm surge, the Limitation Petitioners in this case had no knowledge of an immediate and pending natural disaster that would affect how they conducted their dredging operations. Furthermore, it cannot be said that any dredger could have foreseen that performing its dredging activities negligently—as opposed to in conformity with the Corps of Engineers' specifications— would probably result in the series of events culminating in the

catastrophic damages that occurred during Hurricane Katrina. No reasonable dredger could have anticipated that its negligence would make the difference between the levee systems holding or failing in the event of a hurricane. The damages alleged here are "beyond the pale of general harm which reasonably might have been anticipated by negligent dredgers." *Consol. Aluminum*, 833 F.2d at 68.

This is not to say that it could never be foreseen that dredging could create conditions that would result in flooding after a hurricane. Rather, we find that it was not foreseeable that the marginal erosion caused by any act of negligence by a Limitation Petitioner would substantially affect the impact of the hurricane such that the failure of the levee systems and subsequent flooding would be the probable result.[11] The causal sequence alleged in the present case is far more attenuated than the causal sequences described in *Consolidated Aluminum* and *Lloyd's Leasing*, in both of which we held as a matter of law that the harm alleged was not foreseeable.[12]

## 2.    Causation and Group Liability

---

[11] The Claimants allege that the Limitation Petitioners dredged negligently, but do not allege whether all or only part of their activities were negligent. Even if all of the Limitation Petitioners' dredging activities were performed negligently, however, the Claimants allege that the Limitation Petitioners dredged at various times over thirteen years at various points along the seventy-six mile course of the MRGO. Simply put, the Claimants' injuries are too remote from these alleged acts of negligence to have "arise[n] from the risk of danger created by [the] negligence." *Signal Int'l*, 579 F.3d at 495 n.19.

[12] As the district court noted, this case bears some similarities to *Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676 (E.D. La. 2006), in which the plaintiffs alleged that damage to wetlands caused by the exploration and extraction efforts of numerous oil and gas companies contributed significantly to the destructive impact of Hurricane Katrina. Applying Louisiana tort law but citing *Consolidated Aluminum*, the court concluded as a matter of law that the defendants did not owe a duty to the plaintiffs because the connection between the harm alleged—extensive flooding after a significant hurricane—and the defendants' behavior—allegedly negligent acts in connection with oil exploration and production that resulted in harm to wetlands—was too attenuated. *Id.* at 692.

18

"Under the general maritime law, a party's negligence is actionable only if it is the 'legal cause' of the plaintiff's injuries," which is "something more than 'but for' causation [—]the negligence must be a substantial factor" in causing the injuries. *Donaghey v. Ocean Drilling & Explor. Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

The district court noted that, according to the pleadings, most of the erosion of the wetlands and the attendant weakening of the natural buffer protecting New Orleans from storm surge and flooding is attributable to the very existence of the MRGO, and to maintenance dredging by the Corps of Engineers for decades prior to any actions by the Limitation Petitioners. The Corps of Engineers dredged the MRGO exclusively from 1965 to 1993, after which it awarded contracts to numerous private dredgers, including the Limitation Petitioners. The Claimants themselves assert in their pleadings that by the 1990s, when the Limitation Petitioners first began to dredge the MRGO, "the project was [already] widely characterized as an environmental disaster, although adverse environmental impacts from the MRGO were evident as early as the late 1960s." Yet the Claimants contend that their damages resulted—not from the existence of the MRGO or from any non-negligent dredging performed by the Corps of Engineers or the Limitation Petitioners—but from the additional marginal erosion caused when the Limitation Petitioners deviated from the standards set out in the Corps of Engineers contracts and in various rules and regulations alleged to apply to their dredging operations.

Accordingly, the district court found that the Claimants could not demonstrate that any individual dredger's actions were a substantial cause of any of the Claimants' damages. The district court found that "the pleadings demonstrate that it would be virtually impossible that the act of one dredger sometime after 1993 was a cause of the damages. At the very best, plaintiffs would have to show that the cumulative action of all of the dredgers was a

cause." The court concluded that the Claimants must therefore rely on a theory of group liability which we have never recognized or applied under maritime law.

Claimants clarify on appeal that they are not urging a group liability theory, alleging rather that "each Limitation Petitioner caused its own separate damage, while dredging different sections of the MRGO, under separate contracts, in different years," and that "[e]ach may or may not have caused damage and each is liable only for the damage it caused." However, the Claimants' pleadings lack sufficient factual allegations to state a claim against any individual dredger. *Twombly*, 550 U.S. at 555. As the district court stated, "the Claimants' pleadings do not differentiate among the dredgers, do not state where the dredging activities took place, [and] do not state whether all or part of the dredging activities conducted by the [Limitation Petitioners] were negligent." Simply put, the Claimants' pleadings do not assert a causal relation between any of the Limitation Petitioners' dredging operations and any of the Claimants' damages, much less that any negligent act was a substantial cause thereof.

## III.  CONCLUSION

For the above reasons, we AFFIRM the judgment of the district court.