Daniel J. REGAN, Plaintiff

v.

STARCRAFT MARINE, Limited Liability Corporation, Defendant–Third Party Plaintiff–Appellant.

Lexington Insurance Company; New Hampshire Insurance Company, Defendants–Appellants

v.

United States of America, Third Party Defendant–Appellee.

No. 10–30619
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 15, 2011.

Francis P. Manchisi, Lorraine E.J. Gallagher, Esq., Wilson, Elser, Moskowitz, Wilson, Elser, Moskowitz, Edelman & Dicker, L.L.P., White Plains, NY, Spencer Lyle Trahan, Frohn & Thibodeaux, Lake Charles, LA, for Defendant–Third Party Plaintiff–Appellant.

Michelle Terry Delemarre, Stephen M. Ketyer, U.S. Department of Justice, Washington, DC, Jennifer Bailey Frederick, Assistant U.S. Attorney, U.S. Attorney's Office, Lafayette, LA, for Third Party Defendant–Appellee.

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM: *

This appeal stems from a boating accident in which Plaintiff Daniel J. Regan was thrown from a boat and struck by its propeller, resulting in amputation of one of his legs. Regan filed suit against the pilot of the boat, John Vandergriff, and the boat's manufacturer and its insurers, Starcraft Marine, LLC, Lexington Insurance Company and New Hampshire Insurance Company (collectively, "Starcraft"). Starcraft, in turn, filed third party complaints against Vandergriff and the United States, because the United States Army owned the boat. Starcraft alleged that the Army negligently failed to warn Vandergriff about dangers associated with the boat, selected the wrong boat, and failed to properly maintain the boat. After an extensive procedural history, the district

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court granted summary judgment to the United States, finding that Starcraft failed to establish a genuine issue of material fact as to whether any negligence by the United States caused or contributed to Regan's injuries. Starcraft appeals, contending that the district erred in failing to find that the Army's failure to warn was a cause of the accident. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 16, 2005, Daniel J. Regan and six companions joined John Vandergriff at the Army's Toledo Bend Morale, Welfare, and Recreation ("MWR") Facility for a boating excursion. At the time, Regan and Vandergriff were both Staff Sergeants in the United States Army, Missouri National Guard, and served as Military Police at Fort Polk in Leesville, Louisiana. Earlier that day, Vandergriff had rented a pontoon boat from the MWR boat rental facility. Vandergriff piloted the boat out into the Toledo Bend Reservoir, and the group spent the afternoon riding on the boat, swimming and drinking. Around 7:00 p.m. that day, Regan stood up in the boat as Vandergriff simultaneously decelerated, causing Regan to lose his balance and fall. Regan grabbed the gate at the bow of the boat but the gate came loose and Regan fell into the water. The boat's propeller struck Regan's right leg, causing injuries that resulted in doctors amputating the leg. After the accident, authorities administered Vandergriff a horizontal gaze nystagmus test to test for the influence of alcohol, which he failed. They also administered blood alcohol content tests, but the tests were excluded by the district court as inadmissible summary judgment evidence.

Regan filed suit against Vandergriff and Starcraft in Louisiana state court on November 7, 2005. On January 24, 2006, Starcraft removed the suit to federal court, and on February 21, 2006, it filed a third-party claim against the United States and a cross-claim against Vandergriff. In July 2006, the district court remanded the case to state court, and the Army promptly removed the suit to federal court and filed a motion to dismiss on August 2, 2006. The district court granted the Army's motion to dismiss based on the *Feres* doctrine, and this Court reversed and remanded on April 10, 2008, in *Regan v. Starcraft Marine, LLC*, 524 F.3d 627 (5th Cir.2008). On April 2, 2010, the Army filed a motion for summary judgment, arguing that its conduct did not contribute to Regan's injury. The district court granted the Army summary judgment on June 24, 2010, and Starcraft timely appealed.

## II. DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.CIV.P. 56(a). We review the district court's grant of summary judgment de novo, viewing "all facts and evidence in the light most favorable to the non-movant." *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 675 (5th Cir.2010) (citations omitted). A district court deciding a summary judgment motion prior to a bench trial, such as here, "has somewhat greater discretion to consider what weight it will accord the evidence." *Id.* at 676 (quoting *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir.1991)). Therefore, the district court may properly draw inferences without resorting to a trial, so long as those inferences do not involve witness credibility or disputed material facts. *In re Placid Oil*, 932 F.2d at 398 (citing *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).

Starcraft primarily argues on appeal that the district court erred in failing to

find that the Army breached its duty to warn and instruct on the operation of the boat, and that such breach was an actual and legal cause of the accident. Starcraft claims that the Army negligently failed to properly warn and instruct Vandercliff about certain provisions in the Operator's Briefing Checklist that the boat rental agent gave to him and had him sign, because the agent did not verbally review each of the instructions as established procedure recommends. The warnings that Starcraft identifies are: (1) no riding in elevated bass seats while the engine is running; (2) driver cannot consume alcoholic beverages; (3) do not overload the boat with more than ten persons or 1440 pounds; (4) instruction about proper use of the "kill switch"; (5) conduct radio checks prior to departure; and (6) how to find the landmark for "Army Cove" to return the boat. It further argues that the Army failed to provide clarity as to the prohibition on passengers standing up in the boat and the consumption of alcoholic beverages by the driver, and that because the radio was inoperable from the water, the boat was unseaworthy. Starcraft also contends that the Army's selection of a fishing vessel, with seventeen inch high sides, rather than a cruising vessel, with twenty-seven inch high sides, was also negligent and a contributing cause of the accident. It argues that these failures all raise genuine issues of material fact as to whether the Army negligently caused the accident.[1]

The parties agree that federal maritime law applies in this case. In a negligence claim under maritime tort law, Starcraft must demonstrate that the Army owed a duty to Regan, a breach of that duty, that Regan sustained an injury, and a causal

connection between the injury and the Army's conduct. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir.2010). The duty owed under maritime law is one of ordinary care under the circumstances, and may only be owed "with respect to the interest that is foreseeably jeopardized by the negligent conduct." *Id.* (quoting *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir.1987)). The Army's conduct must be the "legal cause" for the injury; that is, more than just a but-for cause but also a substantial factor in the causing the injury. *Id.* at 213–24.

■ The Army likely owed a duty to Regan of informing Vandergriff about dangers and safety issues relating to the boat. Vandergriff had rented a boat from the same rental agent two weeks prior to the accident, at which time the agent reviewed the safety checklist with him. When Vandergriff rented the boat on the day of the accident, the agent recognized him and did not verbally go through the checklist with him, but instead handed him the checklist and required Vandergriff to initial it, which he did. Assuming *arguendo* that this failure to verbally repeat the instructions was negligent, the evidence shows that it was not a cause of Regan's injury.

Starcraft presents no evidence that several of the items on the list had any causal relation to the accident, namely, information about the "kill switch" and the landmark for "Army Cove." Concerning the weight limit, while the passengers allegedly exceeded the weight limit by approximately thirty-seven pounds, Starcraft's own expert testified that this did not con-

---

1. In its summary judgment motion, Starcraft also contended that the Army negligently maintained the boat and that this was an additional cause of the accident. It makes no such argument in its brief on appeal and that

argument is therefore waived. *See Travelers Lloyds Ins. Co. v. Pacific Emp'rs Ins. Co.,* 602 F.3d 677, 687 n. 43 (5th Cir.2010) (noting that argument raised at summary judgment and not renewed on appeal is waived).

tribute to the accident. Additionally, while Regan and another passenger were sitting in the elevated bass seats immediately prior to the accident, the undisputed testimony establishes that Regan lost his balance only after he had stood up, and Starcraft has made no argument that Regan's sitting in one of these seats was a possible cause of the injury.

As to the other items, Starcraft argues that the Army failed to adequately warn Vandergriff about (1) its prohibition of the driver consuming any alcoholic beverages and (2) about the danger of passengers standing up in the boat while it is in motion, and that these failures were a substantial factor in the accident. The instructions provided to Vandergriff and initialed by him indicated both that passengers should not stand when the boat was in motion, and that the driver must not consume alcoholic beverages. Additionally, the inside of the boat contained a visible warning against standing while the boat is in motion. Vandergriff also testified that he was able to understand the instructions and had no questions about them. Significantly, he averred that he understood the rule that the passengers should not stand while the boat was in motion, and on several occasions warned standing passengers to sit down. Because there is no dispute that Vandergriff understood the instruction and attempted to enforce it, the Army's failure to give Vandergriff a verbal instruction about the warning on the day of the accident cannot amount to a substantial factor in the accident. Likewise, Vandergriff testified that he understood that the rules prohibited alcohol consumption, but that he felt that like driving a car, "you can still have a beer before you get in your car, as long as you're not impaired." Because Vandergriff was aware of the prohibition but chose to drink anyway, the lack of a verbal warning about drinking cannot constitute a substantial factor in the accident.

■ Starcraft also argues that the Army's failure to provide a working radio made the vessel unseaworthy, and was also a substantial factor in the accident. It maintains that Vandergriff and the passengers had trouble finding the boat return, and if the radio had worked, they could have called for directions and would have returned the boat by 6 p.m. Because the accident happened around or after 7 p.m., Starcraft therefore asserts that the lack of a working radio was a cause in the accident. This argument is utterly without merit. While the lack of a working radio may amount to but-for causation, it surely cannot amount to a proximate cause of the accident. There is no evidence that the time of day played any role whatsoever in the accident, and Starcraft's expert testified as such. Therefore, a broken radio which allegedly delayed the return of the ship could not foreseeably lead to the injuries suffered.

■ Finally, Starcraft argues that the Army's selection of a fishing vessel rather a cruising vessel was negligent, and a cause of the accident. It contends that the ten inch higher sides of a cruising vessel could have prevented Regan from falling overboard, and given the normal uses of the boats it rented out, the Army was negligent in selecting a boat with sides as low as the fishing vessel. Starcraft has presented no summary judgment evidence that the ten inch higher sides could have prevented the accident. In fact, Starcraft's expert testified exactly the opposite: given Regan's center of gravity while standing in the boat, it would have required a cage to keep him from falling off. Therefore, Starcraft has failed to show a genuine issue of material fact that the higher sides could have played any role in preventing the accident.

### III. CONCLUSION

Because Starcraft has failed to show that any of the Army's alleged failures to warn were a cause of Regan's accident, the district court correctly granted the Army summary judgment. We therefore AFFIRM the judgment of the district court.